ing given for the purpose of paying any *bona fide* debt, but for the purpose of hindering, delaying and defrauding creditors and to avoid the payment of petitioners' account. Wherefore they prayed for the issuing of an attachment against all the property of Holt liable to attachment. To this petition was appended the affidavit of one of the plaintiffs, that Holt was indebted to them in the sum above named, and that he was fraudulently disposing of his property. On the same day, November 15, 1889, the plaintiffs gave a bond with security, payable to the defendant in attachment; and thereupon the judge of the city court issued an attachment returnable to the December term, 1889, of the city court.

REECE & DENNY, for plaintiffs.

EWING, THOMPSON & EWING and C. A. THORNWELL, for defendant.

---

COUNTRYMAN *v.* EAST TENN., VA. & GA. RAILWAY CO.

The evidence showing that, even if the defendant was guilty of some degree of negligence, the plaintiff, being an employee, was himself negligent and could, by the exercise of ordinary care, have avoided the injuries he received, a nonsuit was properly granted.
October 1, 1892.                                    *Judgment affirmed.*

Railroad employee. Negligence. Nonsuit. Before Judge MEYERHARDT. City court of Floyd county. September term, 1891.

Countryman sued the railroad company for damages. A nonsuit was granted, and he excepted. His testimony tended to show the following: He was caller at the railroad depot in East Rome. His duties were to wake up conductors, brakemen and firemen when they were needed and were not at their places. Occasionally he carried dispatches from the telegraph office to the railroad authorities. He was working under Lloyd, the night yard-master for the defendant. On the night of

August 31, 1890, came a telegram that there was an engine broken down on the main line near the junction below, and they wanted a machinist from the shops to go down and fix it. Reed, the head telegraph operator, came to plaintiff and told him to carry the telegram to Griffin, the master-mechanic, at his office on the yard. On his way there, passing between the turntable and the water-tank, he fell into a pit about twelve feet long and three or four feet deep, and was injured to a considerable extent. He did not know it was there. He supposed it was there for the purpose of cleaning the cinders from the fire-boxes of the engines. It was just between the tracks on the yard near the turn-table. He did not see it because it was dark, and he could not see it unless he had been watching very carefully for it. There were no lights on the yards to show it, 'and he had no light with him. He was about every night, but generally carried a lamp. At this time the yard-master had borrowed his lamp (it was plaintiff's private property), and had it further down on the yard. He supposed there were lamps about the depot, but they were very particular about lending them. He does not remember that he made any effort to get a lamp; nor did he go to the yard-master for the borrowed lamp when he found he had the message to carry. The yard-master was three hundred yards on the lower part of the yard below where he was hurt, and still on ahead. Plaintiff knew it was safer to have a lamp, but he was working under Reed and had to obey his orders. He was not furnished with a light by the company. He was about fifty-four years old and had been wearing glasses twelve or thirteen years. He could not see as well at night as in the daytime. Probably he might have seen the hole if he had been looking down closely, but his attention was then occupied looking for the light in Griffin's office. It was a dark night. He was

right among a nest of railroad tracks. There is no street near where he was hurt, except a big road about seventy-five or eighty yards off. Nobody had any business in there except railroad men. The yard was not enclosed in any way. He was not warned of any danger in going on this part of it. The coal for the engines is on the yard there, and the water-tank; and they repair engines there. Employees are travelling up and down the yard all the days of the year. When he stepped into the pit he was trying to see where the office stood. He knew just about where it stood, and the side-track on his right hand was crowded with freight-cars. The office is just by that side-track. A man had to keep his eyes open and watch out for an engine running there. They were switching backwards and forwards all the time. Plaintiff lived at the end of the yard down where another railroad crosses. He moved there in February before. The place where he was hurt was between his house and the depot, off ninety to one hundred feet from the main line. He went home every morning. Ten tracks ran into the turn-table. In front of the office there is a little open space, but he had to go between the water-tank and the coal-beds, which threw him between the water-tank and the turn-table on to the ends of these tracks. He supposes these pits are boxed up with plank; they could not cover the pits up and keep them covered unless they would take the covers off whenever they used them; it is necessary for railroads to have some place to unload cinders, and pits to work on engines from underneath them. He does not know how long they had been dug; did not know they were there; this was the first time he had been in there. He had been there forty-two days, and knew he had to carry messages and wake up people all around there; never made an examination to find out what trouble there might be. His

work was at night, and when day came he was generally sleepy and went home ; never studied about whether it was prudent and proper to understand all about the location. The pits were ninety to one hundred feet from the main line, which he used in going from his work to his home. Between the office and one or two of the tracks is a space of ten or fifteen feet, but he had not reached that point. The water-tank ran up against the ends of two of them. On two sides of this place were main lines. There was no wall or fence around it. There is one track that comes out and connects with the main line. There is nothing to prevent a man from walking down that track into the turn-table. The only difference between that track and the main line is, that you would see it lay in a cluster of cars ; except for the cars standing there, there is no difference between this track and a main line turning off there. It is part of the yard and not separated from it. There are no other parts of the yard where they have open pits between the tracks. He did not mean that it was unsafe to go on the track without a light, any more than that he might stump his toe against a cross-tie or something and fall. There was further testimony touching the extent of the injury, the pain and suffering, the plaintiff's earning capacity, etc.

Wright & Harris, for plaintiff.

Dorsey, Brewster & Howell and McCutchen & Shumate, for defendant.

---

## Smith v. Ray.

One who receives the money of another from a third person by winning it at a game of chance played with such third person, is liable to the owner in an action for money had and received, and the right of action does not rest upon the statute, but upon the common law. Mason v. White, 17 Mass. 559; Clarke v. Shee, Cowp.