Burgwyn Bros. Tobacco Co. *et al.* v. Bentley & Co. *et al.*

1. An amendment to an equitable petition alleging that a certain mortgage on personalty had been by the mortgagee transferred to another, and praying that the latter be made a party defendant to the case, upon which being done, he filed an answer averring that he was the *bona fide* purchaser from the mortgagee of the mortgage in question, it was not error to admit this mortgage in evidence over an objection by the plaintiffs that no written transfer of the same was shown.

2. The admission in evidence, at the hearing of a petition for injunction and receiver, of a mortgage *fi. fa.*, over an objection that the affidavit of foreclosure was sworn to by one not the mortgagee, but who described himself in the affidavit as the owner and holder of the mortgage, while the *fi. fa.* was issued in favor of the mortgagee, if erroneous at all, was harmless, it appearing that this

evidence neither could nor should have had any weight with the judge in making up his decision, and the irregularity in the *fi. fa.* being amendable by making it read in favor of the mortgagee for the use of the affiant.

3. The fact that certain creditors of a firm of insolvent traders, holding mortgages on the stock of goods of such firm, are also partially secured by collaterals, affords no ground for appointing at the instance of general creditors a receiver to take possession of the goods, it appearing that the court did appoint a receiver as to all other assets of the firm, with authority to demand and receive from the sheriff any surplus of the proceeds of the mortgaged property after discharging the mortgages upon it.

4. It appearing that two of the mortgages are usurious, direction is given that the court below, by a further hearing, ascertain the probable amount of usury in such mortgages and thus arrive approximately at the amount of principal and lawful interest due thereon, and after so doing, direct the sheriff that in case the mortgaged property brings more than enough to satisfy the latter amount, he shall turn over to the receiver a specified sum amply sufficient to cover the amount of usury which, by the final decree, it may be ascertained these mortgages contain, all the rights of the parties as to the question of usury to be fixed and adjusted by such decree.

October 24, 1892.

Mortgage. Amendment. Evidence. Debtor and creditor. Usury. Before Judge MARSHALL J. CLARKE. Fulton superior court. March term, 1892.

Burgwyn Brothers Tobacco Company and others filed their petition in the nature of a creditor's bill against their debtors, J. M. Bentley & Company, and certain other defendants, asking for injunction, receiver, etc. After a hearing the court denied the prayer for receivership so far as the stock of goods of Bentley & Company was concerned, but granted a receiver as to other assets they might have, with authority to demand of the sheriff and receive any surplus of the proceeds of the stock which might be in his hands after discharging mortgages upon it. Plaintiffs excepted, alleging that the court erred in not appointing a receiver as prayed for; in not enjoining the Atlanta Talc Manufacturing Company and H. Lewis, defendants, from collecting

usury in their mortgages, and in not ordering the same held subject to a final trial by jury; in permitting these mortgagees to proceed without enjoining them from the collection of the usury; and in certain rulings as to evidence, mentioned hereafter.

The petition set forth the claims of petitioners, and alleged that they were all due; that demand had been made of the debtors for payment after maturity of the debts, and payment had been refused; that the debtors were a firm of traders and were insolvent; that mortgages had been given, two to the Atlanta Talc Manufacturing Company, one for $650, dated February 10, 1892, and recorded April 22, 1892, and the other for $225, dated and recorded ———, and one to J. H. & A. L. James for $2,000, dated April 25, 1892; that these mortgages covered the stock of goods, and the mortgage to James covered notes and accounts, and in law notes and accounts could not be mortgaged, the attempted transfer of them in the manner set out in the mortgage being illegal and void; that J. H. & A. L. James, in addition to their mortgage, had a number of notes as collateral security, sufficient to discharge the indebtedness to them; that the Atlanta Talc Manufacturing Company had sufficient collateral security outside of the mortgages to fully satisfy and pay off all indebtedness due it, if any was due it, which petitioners did not admit, nor did they admit that there was due J. H. & A. L. James the sum mentioned in their mortgage; that the mortgages are tainted with usury and are void; and that the mortgagees should exhaust their collateral security before going on the stock of merchandise. The petition prayed for a receiver to take charge of all the assets of Bentley & Co.; that the defendants be enjoined from interfering with the assets and be required to turn them over to the receiver; that the Atlanta Talc Manufacturing Company and J. H. & A. L.

James be enjoined from proceeding with their mortgages or collecting any of the assets in their hands, and from transferring their mortgages or any of the assets held by them, etc. By amendment it was stated that, it having been disclosed by the answer of Tolleson, one of the defendants, that he had transferred to Lewis one of the mortgages, an order was asked making Lewis a party defendant, and it was prayed that he be required to show cause why the receiver should not be appointed and injunction issue, and why the mortgage held by him should not be cancelled and set aside.

J. H. & A. L. James answered: The mortgage of $2,000 was made to them to secure a note of like sum, to cover an existing indebtedness with the intention and expectation of further advances being made, which on account of the feared insolvency of Bentley & Company were never made, and the latter are now indebted to J. H. & A. L. James upon notes now amounting to $400, and an overdraft amounting to $366.33. These defendants hold, as collateral security, certain notes and drafts the face value of which is $941.54, which they are endeavoring to collect in reduction of the indebtedness, but out of which they do not expect to be able to realize the whole indebtedness due them. They rely upon their mortgage as security only so far as the property therein set out can be mortgaged in law. They have not received so much as $15 interest on the debt, and claim only lawful interest of eight per cent. The mortgage is just and valid. Attached to the answer was a copy of the mortgage and of the note, and a list of the collaterals. By amendment these defendants set forth that since they made their answer they had collected enough to reduce the indebtedness upon the overdraft from $366.33 to $255.80, making the true indebtedness to them $655.30.

The Atlanta Talc Manufacturing Company answered:

On April 9, 1892, Bentley & Company made it three notes for $75 each, due fifteen days from date and payable to Tolleson or bearer. To secure these notes Bentley & Company gave a mortgage on the stock of goods. These notes and the mortgage were transferred for value and before maturity to Lewis, and this defendant now has no interest in them. The sale of the notes and mortgage occurred on April 11, 1892. On February 10, 1892, Bentley & Company owed this defendant $650, evidenced by note of that date, due ninety days after date, secured by a mortgage on the stock of goods. A deposit of collaterals was also made to secure this note, but these collaterals will not pay the debt or anything like it, they being substantially and practically worthless, and defendant looks to the mortgage as the only source from which to realize its debts. Defendant is informed that Bentley & Company are insolvent. The stock of goods is worth about $1,200, but defendant believes that any sale of this stock will bring a much less sum. The three mortgages held by Lewis, James and defendant will more than exhaust the fund which may be realized from the property mentioned in the mortgages, and the appointment of a receiver will be a costly hardship upon the mortgagees, from which petitioner can reap no benefit. Out of the collaterals deposited to secure its debt this defendant has collected $300. It had the right, as will be shown by the notes, to use the collaterals. In pursuance of this right it has discounted $300 face value of the collaterals with J. H. & A. L. James. Defendant had to indorse these collaterals; they are of but little value, and defendant will probably be forced to take them up. Defendant denies that at the time the restraining order and rule *nisi* were granted, Bentley & Company were traders. Their stock of goods had been seized by the sheriff the day before the granting of the order and rule.

Lewis answered: On April 11, 1892, he purchased from Tolleson the mortgage made by Bentley & Company to secure an indebtedness of $225. The notes the mortgage was given to secure were not paid at maturity, and defendant foreclosed his mortgage. He has been informed that the sale of the property has been stopped by an order of the court. He does not know why a receiver should not be appointed, but if it is meant that a receiver should be appointed for the stock of goods embraced in his mortgage, he earnestly protests against it. He is informed and believes that there are liens on the stock which will more than exhaust any fund arising from a sale thereof. The notes and mortgages were purchased by him for value before maturity, and so far as he knows, are perfectly valid. The mortgage was foreclosed on April 25, and he is informed that the restraining order and rule *nisi* were granted on April 26. At that time the store had been closed by the sheriff, and the business stopped.

Upon the hearing plaintiffs introduced testimony of Bentley, one of the defendants, to the following effect: When the bill was filed he was engaged in collecting the outstanding indebtedness due his firm, and continued after the filing as rapidly as circumstances would permit him. His firm was indebted to plaintiffs the amounts set out in their respective bills; these debts were due, and demand had been made upon his firm for them. He had taken an inventory of his stock of goods and merchandise just after his store was closed by the sheriff, and it invoiced $2,400. The merchandise and fixtures were valued at their cost price. Some of his goods were of a perishable nature, and he did not know at the time he testified the condition of those goods. All his stock was new, as his firm had only been in business about six months. His firm borrowed $500 from the Atlanta Talc Manufacturing Company about

the date when the mortgage was executed, and executed note and mortgage for $650; and $200 about the date of the second mortgage to that company, giving notes and mortgage for $225. His firm never received on the notes and mortgages more than $700, and was never indebted to the company more than that sum, excluding the usury contained in the face of the mortgages. The company had collected $302 of the notes placed with it as collateral security in addition to the mortgages, and he was informed and believed that it had rediscounted or hypothecated three more of the notes, realizing $300 from J. H. & A. L. James, making a total of $602 which should be credited on the company's mortgages.—James testified that he discounted three notes for $300, payable to Bentley & Company, and paid Tolleson the money for the notes, less the discount. Two persons testified that they had been engaged in the grocery business for a number of years, and upon an inspection of the stock of groceries and fixtures of Bentley & Company, thought they were reasonably worth from $1,200 to $1,500. Plaintiffs also introduced a pauper affidavit made by Bentley. J. H. & A. L. James introduced their mortgage, covering the stock of goods and fixtures of Bentley & Company, at No. 56 South Broad street, Atlanta, Ga.; "also notes, drafts and accounts on books of said J. M. Bentley & Co., a list of which is furnished by them on a separate piece of paper"; also two mules and a dray. This mortgage stated that it should stand for and include all future advances of money and indebtedness of any kind to date of foreclosure or settlement, owing by Bentley & Company to J. H. & A. L. James. The rate of interest stipulated for in the mortgage was eight per cent. James testified that since making their answer his firm had collected, out of the collaterals it held, enough to reduce the indebtedness upon the overdraft from $366.33

to $255.80, and the true indebtedness of Bentley &
Company to his firm was $655.80.  There was evidence
of several persons who had been engaged for a num-
ber of years in the grocery business, that the stock of
Bentley & Company was not worth more than from
$1,000 to $1,200, or that if it was sold within thirty
days from a day named, it would not bring exceeding
$1,000 to $1,200.  Bentley testified that the present
actual value at forced sale of the stock of goods would
not exceed $1,000, and taking the stock as it stands, the
safe and office fixtures would not bring one half the list
price; that the perishable goods and stock have become
damaged in value; that the stock was seized by the
sheriff under mortgage in favor of the Atlanta Talc
Manufacturing Company; and that his former affidavit
was based upon the cost price of the goods and the list
price of safe and fixtures.  The Atlanta Talc Manu-
facturing Company introduced the $650 note.  Lewis
introduced the three notes for $75 each; also the mort-
gage dated April 9, 1892, to the Atlanta Talc Manu-
facturing Company, describing the three notes, and
being upon the following property:  "All of our stock
of goods of every kind and character, and our store at
56 South Broad street, also one fire-proof safe with
burglar-proof vault in it; said safe was made by Na-
tional Safe & Lock Company, and we have paid for it
in full."  Attached to this mortgage was an affidavit
made by H. Lewis, to the effect that he was owner
and holder of the mortgage, and that there was due on
it $225 principal, and $9 protest fees, etc.  Plaintiffs'
attorney moved to rule out this mortgage upon the
grounds, (1) that there was no written assignment of
it, it being made to the Atlanta Talc Manufacturing
Company, and H. Lewis foreclosing it as owner; (2)
that the description contained in the mortgage was in-
sufficient, "as it did not describe what class of goods as

would enable one to find said property." These objections were overruled. Lewis tendered the mortgage *fi. fa.* dated April 25, 1892, issued upon the affidavit attached to the mortgage in favor of the Atlanta Talc Manufacturing Company against Bentley & Company, covering the same property as was mentioned in the mortgage. To this *fi. fa.* plaintiffs objected, upon the grounds that it did not follow the affidavit of foreclosure, the affidavit being made by Lewis and the *fi. fa.* being issued to the Atlanta Talc Manufacturing Company. This objection was overruled.

C. D. MADDOX, W. R. BROWN and BISHOP & MC-WHORTER, for plaintiffs in error.

J. L. HOPKINS & SON and HILLYER & BROTHER, *contra.*

LUMPKIN, Justice.

The facts, other than those herein mentioned, which may be necessary to a full understanding of the rulings made by this court in this case, will be stated by the reporter.

1. When it is incumbent upon a party other than the mortgagee to prove that he owns a mortgage, he should show a written transfer of it to himself; but this is certainly not necessary in a particular case when it is alleged in the pleadings of the opposite party that the mortgage has been transferred to him.

2. The *fi. fa.* which Lewis introduced over the plaintiffs' objection was not properly issued and was not a regular process, there being a serious variance between it and the affidavit of foreclosure. Receiving it in evidence, however, even if erroneous, did no harm, it being manifest that neither its presence nor its absence could or should have affected the mind of the judge in reaching his conclusion upon the matters before him for determination. Besides, this *fi fa.* is amendable. The affidavit made by Lewis, alleging himself to be the owner and holder of the mortgage thereto annexed, and

stating the amounts due thereon, complies with the requirements of section 3971 of the code. It would have been more accurate to allege distinctly that these amounts were due to Lewis upon a mortgage made to the Atlanta Talc Manufacturing Company, owned by deponent but not transferred to him in writing, and an amendment of the affidavit to this effect would have been proper, though not absolutely necessary, because, construed in connection with the mortgage, the meaning of the affidavit is sufficiently clear. Accordingly, the *fi. fa.* should have been issued in the name of the company for the use of Lewis, and this may yet be accomplished by amendment. See *Nicholson & Co.* v. *Whaley*, decided at the last term. 90 *Ga.* 257. In that case an affidavit to foreclose a mortgage on personalty, made by one member of a firm, alleged that the mortgagor was indebted to such firm the amounts due on the mortgage as holders and owners thereof, they not being, however, the mortgagees therein named. This affidavit, like the one made by Lewis in the present case, was really sufficient; but the plaintiffs having asked leave to amend their "proceedings to foreclose" (which, of course, included the affidavit) so as to have them in the name of the mortgagee for the plaintiffs' use, the amendment ought to have been allowed. It was their right, if they so desired, to have their pleadings complete and perfect in all respects, and we held in the case just mentioned that a denial of this right was erroneous. The mortgage *fi. fa.* was not set out in the record of that case, but presumably it followed the affidavit and was issued in favor of affiant's firm. If so, it needed amendment, and our ruling that the proceedings to foreclose were amendable by inserting as party plaintiff the name of the mortgagee for the use of the owner, was broad enough to allow the necessary amendment to the *fi. fa.* When the irregularity in the

*fi. fa.* belonging to Lewis has been corrected by proper amendment, its right to proceed or participate in the fund realized from a sale of the mortgaged property will be governed by what is said in the fourth headnote.

3. A diligent creditor should not be needlessly interfered with in the prosecution of his legal remedies. The fact that a creditor by mortgage has other security, from which he may collect an amount sufficient to satisfy only a part of his claim, certainly should not delay him in proceeding with the mortgage, especially when it plainly appears that unsecured creditors will obtain the benefit of the additional security, after the mortgage is satisfied. This will result from the order made by the judge in this case. While the petition alleges that the collaterals held by J. H. & A. L. James and the Atlanta Talc Manufacturing Company were amply sufficient to secure them fully, the proof shows they could realize upon these securities only a portion of the amounts due on their mortgages, and the order, in effect, provides that all the assets of Bentley & Co. shall go to the receiver after the mortgages are paid. Consequently, no reason whatever appears, so far as these collaterals are concerned, why the collection of the mortgages should have been arrested by the appointment of a receiver.

4. A mortgage creditor has no right to collect usurious interest from an insolvent debtor to the prejudice of other creditors. The debtor could pay such interest, if he chose, and a creditor receive it, if no others were concerned or to be affected; but where a failing debtor cannot pay all he owes, any creditor is fortunate enough who receives back his own with lawful interest. This accords with the rulings of this court in *Brooks* v. *Todd,* 79 *Ga.* 692, and *Weihl, Probasco & Co.* v. *Atlanta Furniture Manufacturing Co. et al.,* decided at the last term,

89 *Ga.* 297, and seems to have a foundation in justice and fair dealing. We therefore think our ruling set forth in the fourth head-note makes a proper and lawful disposition of the case.

*Judgment affirmed, with directions.*