1065.  RAGAN *v.* COLEY & BROTHER *et al.*

1. The affidavit of foreclosure and other proceedings to foreclose mortgages on personal property, including the fi. fa., are amendable to the same extent as ordinary suits.
2. A transfer of a mortgage fi. fa. is amendable by the transferee, with the consent of the transferor.
3. A transferee of a mortgage fi. fa. can foreclose the mortgage in his own name as transferee, if for any reason the first foreclosure on which the fi. fa. is based is irregular or defective.

4. "If other fi. fas. are levied on the mortgaged property, and the same is sold, the mortgage fi. fa. may, nevertheless, claim the proceeds of the sale, if its lien is superior."

5. Money rules are in the nature of equitable proceedings, and the right of the respective claimants should be determined by equitable principles. Therefore, where the transferee of a mortgage fi. fa. holds the same as a bona fide purchaser for value, without any notice of any defect in the foreclosure proceedings, and without notice that any one other than the mortgagee, who is also the transferor of the fi. fa., has an interest in the mortgaged property, his right to the proceeds of the mortgaged property is superior to that of the holder of a common-law judgment, and fi. fa. issued thereon, subsequent in date to the mortgage.

Appeal, from Pulaski superior court—Judge Martin. January 15, 1908.

Submitted May 5,—Decided June 18, 1908.

The questions in this case arise on a rule against the constable for money in his hands, realized from the sale of personal property by virtue of a common-law execution against Blackshear. The rule was brought by Coley & Brother, transferees of a mortgage fi. fa. against Blackshear; and D. L. Ragan, the holder of the common-law fi. fa. under which the property was sold, was made a party to the rule. All questions of law and fact were submitted to the court without the intervention of a jury, and the fund was awarded to Coley & Brother, the holders of the mortgage execution. The facts were stipulated, and were substantially as follows: On November 13, 1902, the defendant in execution, James Blackshear, made his note, payable to B. F. Boone, agent, or bearer, for $177.43, due September 1, 1903. This note was secured by a mortgage on personal property set out in the body of the note. The mortgage was properly executed, and was recorded on November 20, 1902. On September 27, 1903, Boone, agent, foreclosed the mortgage, and in his affidavit of foreclosure recited, that he was agent for Miss Ida Purifoy, and that "she is the owner of the mortgage hereto attached." The note and the mortgage were attached to the affidavit. The mortgage given to secure the payment of the note named B. F. Boone, agent, as mortgagee. It was not alleged that Miss Ida Purifoy was the owner of the note, or that the mortgage had ever been transferred to her, and there was no evidence to this effect. Based on Boone's affidavit as agent, the mortgage fi. fa. was issued from the county court of Pulaski on September 28, 1903, the fi. fa. following the mortgage and reciting

that Boone, agent, had recovered the sum therein set forth, against James Blackshear, on the foreclosure of the mortgage made by him to B. F. Boone, agent, and commanding the sale of the property therein described, to satisfy the execution. On September 29, 1903, the sheriff levied this mortgage fi. fa. on the mortgage property. On September 30, 1903, the mortgage fi. fa. was, for value received, transferred to G. R. Coley & Brother by J. B. Mitchell, attorney for B. F. Boone, agent. It was admitted that Mitchell, as attorney, had authority to make the transfer. Miss Ida Purifoy, mentioned by Boone, in his affidavit to foreclose the mortgage, as the owner thereof, was, at the time of the foreclosure and for twenty years prior, a lunatic, confined in the State asylum at Milledgeville. Boone was her half brother, and had been for many years in possession and manager of a plantation in Pulaski county, called the "Purifoy place," which was owned in common by her and himself and J. M. Boone, John L. Anderson Sr., John L. Anderson Jr., and Miss Aline Anderson. In the year 1903 Boone, acting for himself and as agent for the other heirs, rented this plantation to James Blackshear. The note and the mortgage made by Blackshear were taken partly for the rent of this plantation for the year 1903, and partly in payment of a mule which Boone, as agent, sold to him.. Boone collected from Coley & Brother the money on the note and mortgage, and from James Blackshear the money for the rent for 1903, and, after paying taxes and costs, applied the balance of the money to such items as ready-made clothing, and other "necessaries and comforts" for Miss Ida Purifoy. Blackshear, in his negotiation with Boone, as tenant, and in giving the note and the mortgage, dealt with him as an individual, and did not know of his agency, and made no defense to the foreclosure of the mortgage. Coley & Brother paid the money for the transfer of the note and mortgage and fi. fa. to J. B. Mitchell, attorney, without notice or knowledge of any defect in the mortgage foreclosure proceeding, or in the mortgage fi. fa., neither the note, the mortgage, the mortgage fi. fa., nor the transfer containing any reference to Miss Ida Purifoy as having any interest therein. .

On the hearing of the rule, Coley & Brother, over the objection of D. L. Ragan, who held the common-law execution, were allowed by the court to file the following amendments: (1) To amend

the transfer of the mortgage fi. fa., made to them, so that the transfer as amended should read as follows: "For value received I hereby transfer the within mortgage fi. fa. to G. R. Coley & Brother, together with the lien arising from the same, and the note and mortgage on which said fi. fa. is based, together with all the right, title, privilege, and interest of B. F. Boone, agent, as landlord and mortgagee, without recourse on B. F. Boone, agent. This 30th day of September, 1907. J. B. Mitchell, attorney for B. F. Boone." The words "as landlord and mortgagee" were added to the transfer by this amendment. (2) "Defendant in the mortgage fi. fa. upon which the money in question was brought into court did not file a counter-affidavit to the foreclosure of said mortgage, nor give bond in the terms of the statute in such cases made and provided. Movants are bona fide purchasers for value of said mortgage fi. fa., valid on its face, without notice of any defect or defense thereto." (3) "That [movants] are the owners and holders of a certain note and mortgage signed by James Blackshear and made payable to B. F. Boone, agent, and that the money in court arose from the sale of the property in said mortgage; that said note and mortgage is superior to the common-law fi. fa. in favor of D. L. Ragan vs. James Blackshear, which fi. fa. is claiming the money now in court and which arose from the sale of the property given to secure the note held by G. R. Coley & Brother, and referred to in [the original petition]; that James Blackshear is wholly insolvent and unable to respond to any judgment that may be obtained against him; that if movants are not allowed payment of their older lien, out of the fund in court, they are wholly without remedy; that movants, as transferees, have foreclosed the mortgage given to secure the note held by them, and have the execution in court, and hereby tender the same as the highest and oldest paper and lien on the fund in court." (4) "That in the taking of the note and mortgage dated November 13, 1902, for $177.42, on which a foreclosure was had, B. F. Boone was acting as the kinsman and next friend of and for the use of Miss Ida Purifoy, and was likewise acting in his individual capacity and for the heirs of Mrs. H. H. Purifoy, and that the money arising from the said note and mortgage, after the payment of the expenses of foreclosure, was spent in the maintenance of Miss Ida Purifoy and for her comfort; that the stock and wagon named

in the above-described note and mortgage were sold to James Blackshear for the purpose of making a crop on the Purifoy place for the year 1903, and was for the benefit of the said Miss Ida Purifoy, and the benefit of which, after deducting expenses, she received. And [movants] pray that if it be deemed by the court necessary, said mortgage-foreclosure proceedings be amended so as to show that the said B. F. Boone sues for the use of Miss Ida Purifoy and for the other common owners."

Coley & Brother introduced in evidence their foreclosure proceedings as transferees. The execution in favor of D. L. Ragan against James Blackshear, from the county court of Pulaski, is dated December 13, 1904, and is founded on a common-law judgment obtained December 9, 1904, for $87.22 principal, and there is an entry of levy thereon, dated December 26, 1904, reciting that it was levied "on one black horse named Dick," as the property of James Blackshear, found in his possession. The horse was sold under this levy. This horse is a part of the property covered by the mortgage made to Boone, agent, and also levied upon by the sheriff by virtue of the mortgage fi. fa., prior to the levy of the common-law execution. On the day of the sale Coley & Brother placed their mortgage execution in the hands of the officer and claimed the proceeds of the sale. D. L. Ragan, as the holder of the common-law execution, on the hearing of the rule made an attack on the validity of the mortgage fi. fa. transferred to Coley & Brother, on the grounds, that it was based on a foreclosure in which Miss Ida Purifoy was the real creditor, the real plaintiff, and the real holder of the mortgage, and that she is and has been for the last twenty years a lunatic; that she did not foreclose the mortgage, and, being a lunatic, could not have an agent, and the foreclosure of Boone as her agent was void, and that the transfer by Boone, agent, of the mortgage foreclosure was also void, as a person non compos mentis can not have an agent; that this mortgage is not, as to the fund in court, a superior lien to that asserted by this intervenor, for in the affidavit of foreclosure it is asserted that B. F. Boone is the agent of Miss Ida Purifoy in the foreclosure, and there is no attempt to foreclose the mortgage in his own name and for his own benefit; whereas the fi. fa. based thereon is not one in favor of Ida Purifoy, but in favor of Boone as an individual.

The court awarded the money to the mortgage fi. fa. held by Coley & Brother, transferees; and to this judgment D. L. Ragan excepted, and assigns error on the following grounds: (1) The court erred in allowing the amendments offered by Coley & Brother to their pleadings; the objection to the first amendment being that it was immaterial and irrelevant; the objection to the second amendment being that Coley & Brother had not shown such title to the paper as would authorize them to amend the foreclosure proceeding; and further that it was too late to amend the foreclosure as proposed; the objection to the third amendment being that Coley & Brother had not shown such title to the paper as would authorize them to amend the transfer or assignment of the mortgage lien; and further that it was now too late to amend the transfer in the manner proposed; the objection to the fourth amendment being that the lien of the note and mortgage had not been legally assigned to Coley & Brother, and hence they had no right to foreclose the mortgage, and that, there being no legal and valid foreclosure of the mortgage at the time the property was sold, Coley & Brother had no right to substitute a new foreclosure and a new fi. fa. and to claim the proceeds of the sale under this new foreclosure and new fi. fa. (2) The court erred in admitting in evidence the foreclosure and fi. fa. of Coley & Brother, transferees. (3) The court erred in awarding the money in the hands of the bailiff to Coley & Brother, but should have awarded the money to D. L. Ragan on his common-law fi. fa.

*W. L. & Warren Grice,* for plaintiff in error.

*J. L. Grace, H. M. Boyer, H. E. Coates, T. Fort,* contra.

HILL, C. J. (After stating the facts.)

1, 2. The amendments to the original proceedings for the foreclosure of the mortgage made by Boone, agent, were properly allowed by the court. The Civil Code, §5122, provides, that "All affidavits for the foreclosure of liens, including mortgages, and all affidavits that are the foundation of legal proceedings, and all counter-affidavits, shall be amendable to the same extent as ordinary declarations." See also §5105; *Nicholson* v. *Whaley,* 90 *Ga.* 257 (16 S. E. 84). In the case of *Burgwyn Tobacco Co.* v. *Bentley,* 90 *Ga.* 508 (16 S. E. 216), the Supreme Court holds that all the proceedings in the foreclosure of a mortgage on personal property are amendable, from the affidavit of foreclosure to the mortgage

fi. fa. And we think this decision is broad enough to cover all the amendments allowed by the court to the foreclosure proceedings in the present case. The amendment of the transfer of the mortgage fi. fa., which more specifically set out the right, title, and interest therein of the transferor, was properly allowed. We can imagine no possible objection to adding to such transfer that Boone, agent, transferred it not only as agent, but also as landlord and mortgagee. Certainly no one but the transferee could be heard to object to such amendment. This amendment was wholly unnecessary, but entirely harmless.

3. While we do not think it necessary, in the view we take of the case, to decide whether the second foreclosure made by Coley & Brother was properly admitted in evidence on the hearing of the rule, yet we can not see any reason why they would not have had the right to so foreclose, if the first foreclosure was irregular. It is not contended that they did not have a good title to the note and the mortgage, and it is not denied that they bought the same for value, without any notice of any defect in the foreclosure proceedings. If their title to the note and mortgage was valid, it follows that they clearly had the right to foreclose the mortgage.

4. The plaintiff in error insists, that Coley & Brother were not entitled to the fund, because, as holders of the mortgage fi. fa., they did not comply with the law, in that they did not place their fi. fa. in the hands of the officer and cause the property to be sold free from the mortgage; that the effect of this failure was that the horse was sold subject to the mortgage; that their money is still in the horse and he can be resold under the mortgage fi. fa., since nothing but the equity of redemption had been sold under the common-law fi. fa. The Civil Code, §2741, provides: "Property mortgaged may be sold under other process, subject to the lien of the mortgage. If the mortgage is foreclosed, the mortgagee may place his execution in the hands of the officer of the law making the sale, and cause the title unincumbered to be sold, and claim the proceeds according to the date of his lien." It is contended that the plain meaning of this language is that the holder of the mortgage fi. fa. must place it in the hands of the officer before the sale, and cause the property to be sold discharged from his lien. Conceding that this interpretation of the statute is correct, yet the evidence clearly shows that the property in question was sold free

from the lien of the mortgage; for it appears, from the agreed statement of facts, that the mortgage fi. fa. had been levied upon the property prior to the levy of the common-law fi. fa., and that at the time of the sale by the officer under the common-law fi. fa., the mortgage fi. fa. was in his possession, and the holder thereof claimed the proceeds of the sale; and it further appears that the mortgaged property brought its full value at that sale. The Civil Code, §2758, provides: "If other fi. fas. are levied on the mortgaged property, and the same is sold, the mortgage fi. fa. may nevertheless claim the proceeds of the sale, if its lien is superior." Here the property was levied upon by a common-law fi. fa. It was sold, and it is admitted that the lien of the mortgage and of the mortgage fi. fa. was superior to that of the common-law judgment and execution.

5.    Disregarding all mere technical questions of law, we think the judgment awarding the fund to the mortgage fi. fa. was clearly right. It is well settled that money rules are in the nature of equitable proceedings, and that the rights of the respective claimants should be determined according to equitable principles. *Coleman* v. *State* 75 *Ga.* 63; *Cofer* v. *Benson,* 92 *Ga.* 795 (19 S. E. 56). Mere irregularities of procedure will not be allowed to defeat legal and equitable rights. The admitted facts show in this case that the fund in court was realized from the sale of mortgaged property; and it was not controverted that the mortgage lien on the property was of superior dignity to that of the common-law fi. fa. It was not controverted that the mortgagee named therein had the legal title to the mortgage and the note secured thereby, whether he held such title for himself alone, or for himself in common with others, and that he transferred to Coley & Brother the legal title to the mortgage and the note in transferring the mortgage fi. fa. The statement made by the affiant, in his affidavit to foreclose the mortgage, that the mortgage was owned by Miss Ida Purifoy, was immaterial. Certainly it becomes immaterial, according to every principle of equity, when it is admitted that she had received the proceeds arising from the transfer of the mortgage by the agent. She could not contest the validity of the transfer, under these circumstances, and certainly one who held an inferior lien to the mortgage would not be allowed to do so. Strictly speaking, we think the foreclosure of this mortgage

was by B. F. Boone as an individual, and the note and mortgage were made payable to him as an individual, and were transferred by him as an individual; because the word "agent," following his name in all of these instruments, without more, has no legal effect. It is also conceded that Coley & Brother paid for this mortgage and note and the mortgage fi. fa. without notice of any irregularity in the transfer of the mortgage; for neither the note, the mortgage, nor the mortgage fi. fa. contained anything to put them on notice that any one was interested in the mortgage property, except B. F. Boone, agent. They were not called upon, by the use of the word "agent," to inquire as to Boone's authority to make the transfer; for, as a matter of law, the word "agent" meant nothing, and Boone, under the law, had authority as an individual to make such transfer. But whoever had any equitable interest in the property covered by the mortgage, Boone had the legal title thereto, and the right, therefore, to assign or transfer such title. And in addition to this statement of the law, which we think clearly establishes the legal title of Coley & Brother to the mortgage fi. fa., where it also appears that the money which they paid in good faith for such legal title went to those who had the beneficial interest in the property covered by the mortgage, they were entitled to the fund in court arising from the sale of the mortgaged property. The judgment of the trial court is therefore                                   *Affirmed.*